# TOWN OF ROCKINGHAM v. TOWN OF SPRINGFIELD.

## Pauper. Removal.

The pauper, a married woman with four minor children, had a settlement in the defendant town, and while residing with her family in the plaintiff town was abandoned by her husband, who had no settlement in this State; and she, being only able to support herself, applied to the plaintiff's overseer to assist her children, which was granted. The pauper in a short time sold her furni-

Rockingham *v.* Springfield.

ture, closed the house where she was living, and in the space of a few weeks went into several towns, but gained no legal residence, and when the order of removal was made was living in the defendant town; *Held*, (1) that the aid thus rendered was rendered to the wife, who became the head of the family on the abandonment of the husband; (2) that her residence continued, and she was constructively present when the order of removal was made; (3) and that she was legally removed to the town of her settlement.

APPEAL from the order of removal of one Mrs. Smith, a pauper. Heard on the report of a referee, March Term, 1885, WALKER, J., presiding. Judgment that the pauper was unduly removed. The case appears in the opinion.

*C. B. & C. F. Eddy* and *L. M. Reed*, for the plaintiff.

Mrs. Smith, after the abandonment, became in law the head of the family, as much so as her husband was before the abandonment; and as she had an actual residence or home in Rockingham at time of abandonment, such residence in law continued to date of order of removal. *Bethel* v. *Tunbridge*, 13 Vt. 445; *Sprague* v. *Litherberry*, 4 McLean, 442; *Densmare* v. *United States*, 93 U. S. 605; 88 U. S. 584.

" A domicile once acquired remains until a new one is acquired." *Anderson* v. *Estate of Anderson*, 42 Vt. 352.

" Residence acquired in any town continues until another has attached." *Stamford* v. *Readsboro*, 46 Vt. 611.

" Every person must have a domicile somewhere. Every one has a domicile of origin which he retains until he acquires another." *Abington* v. *North Bridgewater*, 23 Pick. 177; *Jennison* v. *Hapgood*, 10 Pick. 77; *Thorndyke* v. *Boston*, 1 Met. 245; Opinions of Judges, 5 Met. 588–9; *Hallett* v. *Bassett*, 100 Mass. 167; *Bangs* v. *Brewster*, 111 Mass. 384–5; *Borland* v. *Boston*, 132 Mass. 89.

It is evident that the terms " residence " and " come into a town to reside " have the same meaning as the terms " home " or " domicile." *Bristol* v. *Rutland*, 10 Vt. 574.

Aid to the children, in a legal sense, was aid furnished to and for Mrs. Smith. *Croydon* v. *County of Sullivan*, 47 N. H. 179; *Gilmanton* v. *Sanbornton*, 56 N. H. 336.

*Waterman & Martin*, for the defendant.

It is only " a stranger *who has come to reside in town*," that can be removed on complaint of the overseer. Hence this is a necessary allegation in the complaint. R. L. s. 2833.

Residence is a fact. It does not rest in mere intention. Where a person is actually in one town, and has no home in another town, no place in which to live, he cannot be considered as a resident in the latter, no matter how strong an intention he may have to go there. *Jamaica* v. *Townshend*, 19 Vt. 267; *Hartford* v. *Hartland*, 19 Vt. 392; *Mann* v. *Clark*, 33 Vt. 55; *Egleson* v. *Battles*, 26 Vt. 548; *Barton* v. *Irasburg*, 33 Vt. 159.

Two things are necessary to show residence; the person must actually be in the town, not by mere intention, or constructively; and must have come there *animo manendi*, or being there must intend to remain there. *Brownington* v. *Charleston*, 32 Vt. 411.

In this case Susan L., at the time, was actually in the town of her legal settlement, had been there for several weeks, and remained there after the order was made. *Barton* v. *Irasburg*, 33 Vt. 157; *Pittsford* v. *Chittenden*, 44 Vt. 382; *Berlin* v. *Worcester*, 50 Vt. 23; *Middlebury* v. *Waltham*, 6 Vt. 20; *Hartford* v. *Hartland*, 19 Vt. 392; *Jamaica* v. *Townshend*, 16 Vt. 267.

She did not ask for help for herself, but for her children. She was never assisted by Rockingham. The home being broken up, and the children taken care of by the town, they could be removed to the place of their legal settlement. *Randolph* v. *Braintree*, 10 Vt. 436.

This is a much stronger case than *Middletown* v. *Poultney*, 2 Vt. 437, where it is held that though all members of the family except the father remain in town, but the home is broken up and abandoned, the residence is not continued as to the father.

The fact that the mother notified the overseer of the condition of the family is of no consequence. No application is

necessary. It was his duty to take care of the children if in need without application. *Weston* v. *Wallingford*, 52 Vt. 630; *Walden* v. *Cabot*, 25 Vt. 522; 5 East, 113.

The opinion of the court was delivered by

POWERS, J. This was an appeal from an order of removal of Susan L. Smith with her children as paupers from the town of Rockingham to the defendant town. Sylvester L. Smith, the husband of Susan L., resided with his family in Rockingham in September, 1881. Although prior to this time he had moved from place to place often with his family, still at this time, as the referee's report says, " he resided " in Rockingham and had a home there. In the language of the pauper laws, he had " come to reside " in that town.

His residence there was the legal residence of his wife and minor children. When *he* came there to reside, in legal effect *they* came there to reside. September 22, 1881, Sylvester abandoned his wife and family, and never afterwards returned to them.

This abandonment by him made his family paupers, and Mrs. Smith applied to the overseer of the poor for aid. The overseer provided assistance by taking care of the children, Mrs. Smith professing to be able to take care of herself, if the town provided for the children. The aid thus rendered by the town; we think, was, in legal significance, aid rendered to Mrs. Smith. She was the responsible head of the abandoned family, charged with the duty of providing for its wants and support. Being unable to furnish such support, she calls for aid, and she receives such aid by being relieved in part of the burden then upon her. The expense incurred in providing for the wants of the children was the same thing as like expense incurred in supplying her personal wants. *Croydon* v. *County of Sullivan*, 47 N. H. 179.

Mrs. Smith then became ·chargeable to the town of Rockingham as a pauper.

As the husband, Sylvester L., never had a legal settlement

in this State, the remedy of Rockingham to recover compensation for the aid thus furnished, or to be relieved against future expense, was enforceable against the town in which Mrs. Smith had a legal settlement. The case shows that she had such settlement in the town of Springfield. Accordingly, the case is this. The town of Rockingham furnished aid to paupers belonging to Springfield. If when the aid was furnished the paupers had come to Rockingham to reside and had become chargeable, the remedy of Rockingham was to take an order of removal and transport the paupers to Springfield, where they belonged. If they had not come to reside in Rockingham the remedy was by way of an action to recover the money paid out.

The right to an order of removal embodies two elements,—residence and chargeability. Both existed in this case.

It has in general terms been said in some of the cases that the validity of an order of removal must be tested by the facts existing when it is made. This rule is not, however, to have a technical and impracticable application. If, pending a complaint before the justices, the pauper runs away from town with intent never to return, the jurisdiction of the justices would not be defeated; they might, nevertheless, proceed and make their order for removal. The moment the town has furnished aid to the needy pauper, the town acquires the right to relief against the town of legal settlement. Thenceforth it is a question between the two towns, in which the pauper is wholly disinterested, and no act of the pauper can affect the rights of either against the other.

Here the pauper had become chargeable,—aid was being furnished. The town of Rockingham had a cause of action to be enforced against some unknown town of legal settlement, if such town could be found. Some time naturally would elapse before the question could be investigated and the town of legal settlement ascertained. Within a very few weeks it is learned that Springfield is the town of legal settlement, and the order is made. Meantime Mrs. Smith has left Rockingham, and at

the date of the order is, in fact, in Springfield. The right to make the order was perfected before she left, and we think it was not lost by absence.

But in this case we think Mrs. Smith was constructively present in Rockingham when the order was in fact made, as that was the town of her legal residence.

She resided there when she became chargeable. That residence continues until a new one is created. She left Rockingham with "no intention to return there to reside;" but she "never made any place after that her home in this State." She went to Chester, then to Andover, then to Springfield, then back to Rockingham, then to New Hampshire. After first leaving Rockingham she answered Judge MATLOCK's graphic description of a transient person—"a wanderer, ever on the tramp." *Middlebury* v. *Waltham*, 6 Vt. 200. She was always a transient person after leaving Rockingham, and so never came to reside elsewhere. While thus on the tramp her residence in Rockingham, for all legal purposes affecting its remedy against the town of her legal settlement, continued unbroken. This was so held by this court in *Stamford* v. *Readsboro*, 46 Vt. 611, and is the doctrine generally recognized. *Desmare* v. *United States*, 93 U. S. 605, 610; *Mitchell* v. *United States*, 21 Wall. 350; *Abington* v. *North Bridgewater*, 23 Pick. 177.

This is the doctrine applied in cases of disputed residence for purposes of taxation and analogous cases. *Mann* v. *Clark*, 33 Vt. 55; *Anderson* v. *Anderson*, 42 Vt. 350.

The judgment of the County Court is reversed, and judgment on the report that the pauper and her family and effects were duly removed.

ROWELL, J., dissenting.