ANABEL MILLER *v.* JAMES C. MILLER.

October Term, 1915.

Present: MUNSON, 'C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed November 23, 1916.

*Divorce—Alimony—Revision of Decree.*

The county court may, on due notice and hearing, revise a decree as to alimony, and is not limited to cases wherein the decree is for an annual allowance.

On a petition to revise an order, directing the libellee in a divorce proceeding to pay $1,500 permanent alimony to his divorced wife, charged with the support of a minor child, evidence considered and *held* that the order could not be held an abuse of the discretion of the county court, beyond which there is nothing for this Court to review.

The trier of fact is not bound in all circumstances to believe testimony not directly contradicted.

PETITION by the libellee in a divorce proceeding for the revision of an order directing him to pay $1,500 permanent alimony to his divorced wife, charged with the support of their minor child. See 88 Vt. 134. Heard at the December Term, 1914, Orange County, *Donoway,* J., presiding. Petition denied. The petitioner excepted. The opinion states the case.

*David S.. Conant* for the libellee.

*E. W. Smith* and *F. S. Williams* for the libellant.

HASELTON, J. Anabel Miller was granted a bill of divorce from James C. Miller, by the Orange County Court at its December Term, 1913. She was granted the care and custody of a very young minor child, their only child, and it was ordered and decreed that James C. Miller pay her the sum of .fifteen hundred dollars, as permanent alimony. James claimed that the court that. granted the divorce was without jurisdiction and

brought the case to this Court on that ground and on no other. See 88 Vt. 134, 92 Atl. 9.

The claim then made was not sustained and the case was remanded with directions that a new time be fixed for the payment of the alimony.

At the December Term, 1914, of the Orange County Court, James filed a petition in the cause asking for a revision of the order as to alimony on the ground that fifteen hundred dollars was too much for him to pay in view of his financial condition.

The petition was denied and James excepted to the action of the court claiming that the denial of his petition was against the evidence and contrary to the evidence, unwarranted by the evidence, and beyond the discretion of the court.

The testimony on both hearings is referred to and made controlling.

The county court may on due notice and hearing, revise a decree as to alimony, and is not limited to cases in which the decree was for an annual allowance. *Andrew* v. *Andrew,* 62 Vt. 495, 20 Atl. 817; *Curtis* v. *Gordon,* 62 Vt. 340, 20 Atl. 820; *Buckminster* v. *Buckminster,* 38 Vt. 248, 88 Am. Dec. 652; *Montpelier* v. *Elmore,* 71 Vt. 193, 195, 44 Atl. 71.

But if the county court has not abused its discretion in the matter, there is nothing for this Court to review.

James Miller and his brother George are, according to the testimony, tenants in common of an excellent home farm in Newbury, of about one hundred and three acres, of outlying lands of such extent that their real estate amounts to at least three hundred and fifty acres, of live stock, appraised by the petitioner's own witnesses at about sixteen hundred and fifty dollars and of the usual farming tools. This property is not mortgaged. According to the testimony the home farm is productive and the brothers have made money, turning their profits into improvements. The home farm was bought about twelve years ago for about three thousand dollars and the barn has since been enlarged at an expense of about fifteen hundred dollars, aside from the labor of the brothers, and about one thousand dollars has been laid out on the house, the plumber's bill being five hundred dollars or more. The brothers put in and have a furnace, and a bath-room, with running water, hot and cold. James has a little bank stock, not much, and a little money in the bank. He owes debts and has something owing to him.

On the first hearing James testified that he was a man of some means, he didn't know how much. Asked if he wasn't worth five thousand dollars or more, he said that he shouldn't say so, if his debts were paid, that he was worth possibly around fifteen hundred dollars. On the second hearing the testimony introduced by him would make him out insolvent, yet he admitted that his financial condition had not materially changed in the interval. The court rebuked his brother George for evasiveness and James' testimony was lacking in candor. The brothers testified as to the value of most of their property, but as to the value of the home farm they would not commit themselves. As to the value of that, James relied on the testimony of two other witnesses who appraised it at three thousand dollars. The court was warranted in believing that it was worth more, and that its owner so believed.

A court or jury is not bound in all circumstances to believe testimony not directly contradicted.

Anabel, the mother, is charged with the maintenance of the only child of the petitioner, and considering this fact and his income and earning capacity along with what evidence there was as to the value of his property and the amount of his debts, we are satisfied that the county court in its order for alimony did not exceed the limits of a sound discretion.

*Judgment and decree affirmed and cause remanded.*